# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 6436 | **DATE** | 6/12/2012 |
| **CASE TITLE** | Smith vs. Hardy | | |

**DOCKET ENTRY TEXT**

The Court denies Defendants' motion to strike [72] and motion for summary judgment [57]. The case remains set for status on 6/18/12 at 8:30 a.m. Defense counsel is instructed to make arrangements for Plaintiff to appear at the 6/18/12 status via telephone and should provide the contact information to the courtroom deputy.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

Pro se prisoner Plaintiff Terrance L. Smith brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his objectively serious medical needs in violation of the Eighth Amendment against certain medical personnel at the Illinois Department of Corrections' Northern Reception and Classification Center at the Stateville Correctional Center. Pending before the Court are Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) and motion to strike Plaintiff's Northern District of Illinois Local Rule 56.1 materials. For the following reasons, the Court denies Defendants' motions.

## BACKGROUND

**I.    Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). On December 14, 2011, Plaintiff provided his Local Rule 56.1(b) materials in response to Defendants' motion for summary judgment and Local Rule 56.1(a)(3) submissions. In the January 18, 2012 reply, Defendants argued that Plaintiff's Rule 56.1 materials were deficient and that the Court should deem Defendants' facts as admitted. Following Defendants' reply on February 8, 2012, Plaintiff filed a new set of Local Rule 56.1 materials to address the concerns raised by Defendants' reply. Thereafter, Defendants brought the present motion to strike arguing that these materials were filed outside the Court's briefing schedule and without leave of Court. On February 13, 2012, the Court issued a minute order explaining that Plaintiff's supplemental filings were made in direct response to Defendants' argument that Plaintiff failed to comply with the Local Rules. The Court then instructed Defendants to respond to Plaintiff's supplemental Local Rule materials. To date, Defendants have failed to respond as ordered.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

The parties' Local Rule 56.1 submissions and dispute have become a collateral matter diverting the Court and the parties from the central issue of Plaintiff's deliberate indifference claim. "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). The parties' Local Rule 56.1 submissions and resultant dispute have not aided the Court, but instead, have only complicated matters. As such, the Court reviews the record as a whole drawing directly from the evidence instead of the parties' Local Rule 56.1 materials. The Court therefore denies Defendants' motion to strike.

## II.     Relevant Facts

In deciding summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Construing the facts and all reasonable inferences in Plaintiff's favor, Plaintiff maintains that he was shot and partially paralyzed in 2000, and thus he is required to catheterize himself four times a day to empty his bladder. (R. 60, Ex. A, Smith 8/26/11 Dep., at 8, 10). To do so, he uses a sixteen inch clear plastic straight catheter, sterile lubricant, rubber gloves, and iodine. (*Id*. at 10-11). Plaintiff requires fresh supplies on a regular basis because he can only use an individual catheter for two days at the most. (*Id*. at 17). Plaintiff also takes medication to relax his muscles and address his pain. (*Id*. at 11-12).

On March 1, 2010, Plaintiff was transferred from the Cook County Jail to the Illinois Department of Corrections' Northern Reception and Classification Center at the Stateville Correctional Center ("NRC"). (*Id*. at 11). He was sent to the NRC for violating his mandatory supervise release term. (*Id*.). Plaintiff stayed at the NRC for four months and then was transferred back to the Cook County Jail. (*Id*. at 9-10).

Plaintiff arrived at the NRC with a small amount of supplies, including one catheter, two tubes of sterile gel, and one latex glove that he brought with him from the Cook County Jail. (*Id*. at 11). Initially, he met with Defendant Nurse Jessica Smith and informed her of his needed supplies. (*Id*. at 19). Plaintiff testified that Smith told him that she would order the necessary supplies for him. (*Id*. at 20). Nevertheless, Plaintiff claims that he never received fresh supplies and that he had to use the dirty catheter that he had brought with him from the Cook County Jail. (*Id*. at 13). Due to the lack of fresh supplies, Plaintiff contends that he used only one catheter for the entire four months he was at the NRC. (*Id*. at 18, 25). This use resulted in a severe bladder infection, boils, mucous leakage from his penis, and loss of urine control. (*Id*. at 26). Plaintiff testified that he now wears diapers. (*Id*.).

As to Defendant Dr. Sylvia Mahone, Plaintiff testified that Dr. Mahone never participated in his treatment, although Dr. Mahone avers that she examined Plaintiff during his entrance to the NRC on March 1, 2010, at which time she determined his medical supply needs and ordered the supplies. (*Id*.; R. 60, Ex. F, Mahone Aff. ¶¶ 4, 5). Further, Dr. Mahone maintains that she saw Plaintiff receive the ordered supplies. (Mahone Aff. ¶ 5). Dr. Mahone's affidavit also includes a March 10, 2010 form and Defendants argue that this form establishes that Plaintiff received the ordered supplies. (Ex. G, 3/10/10 Form). After reading the form, however, it is not apparent on its face and without Dr. Mahone's accompanying explanation whether Plaintiff actually received any such supplies. As to Defendant Sarah Mays, Plaintiff contends that he complained to her about the lack of supplies during his stay at the NRC. (Smith Dep., at 20). Plaintiff asserts that Mays stated she would look into the situation, but nothing ever happened. (*Id*. at 21).

Furthermore, Plaintiff testified at his deposition that he was kept in his cell at the NRC for 24 hours a day and would only leave it once a week for a shower and exercise. (*Id.* at 57-58). He maintains that he was taken to the health care unit in July 2010 by a sergeant who found him in pain due to the infection. (*Id*. at 30-31).

Plaintiff testified that when the sergeant took him to the healthcare unit, the shift was changing, so the sergeant had to take Plaintiff back to his cell. (*Id*.).

Meanwhile, Defendants contacted the Illinois Department of Corrections ("IDOC") to determine if Plaintiff had exhausted his claim through the required grievance process. (R. 60, Ex. C, Haven Aff. ¶¶ 3, 4). The IDOC responded that it had no record of Plaintiff submitting a grievance concerning the lack of medical supplies while he was at the NRC in 2010. (*Id*. ¶ 5.) Plaintiff counters that he did submit three grievances for the lack of medical supplies while at the NRC, but that he never received any response. (Smith Dep., at 36, 37).

## LEGAL STANDARD

Summary judgment under Rule 56(a) is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott,* 550 U.S. at 380. The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250 (quotation omitted). "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.,* 629 F.3d 697, 704-05 (7th Cir. 2011) (internal citations omitted).

## ANALYSIS

### I.   Exhaustion Defense

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this [T]itle, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Maddox v. Love,* 655 F.3d 709, 720 (7th Cir. 2011). In other words, the PLRA requires that an inmate "file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox,* 655 F.3d at 720-21. "Exhaustion is an affirmative defense, and the burden of proof is on [D]efendants." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The first step in Illinois' grievance process is to submit an informal grievance to the prisoner's counselor. *See Dole*, 438 F.3d at 807 (citing Ill. Admin. Code tit. 20, § 504.810(a)). "If the prisoner is not satisfied with the counselor's resolution of the complaint, he may then submit a formal grievance to the prison's grievance officer." *See Dole,* 438 F.3d at 807; *see also Owens v. Hinsley,* 635 F.3d 950, 955 (7th Cir. 2011). The grievance officer has the authority to investigate the grievance, including interviewing the prisoner and witnesses and reviewing the relevant documents. *See Dole,* 438 F.3d at 807 (citing Ill. Admin. Code tit. 20, § 504.810). The grievance officer then submits a recommendation to the warden who makes a final decision at the institution level. *See id*. Thereafter, a prisoner may appeal a warden's determination to the Director of the Illinois Department of Corrections through the Administrative Review Board ("ARB"). *See id*. (citing Ill. Admin. Code tit. 20, § 504.850(a)); *see also Burrell v. Powers,* 431 F.3d 282, 284 (7th Cir. 2005). The regulatory scheme refers all appeals to the ARB, which makes a recommendation to the Director who in turn has the final decision in the

appeals process. *See Dole*, 438 F.3d at 807 (citing Ill. Admin. Code tit. 20, § 504.870(a)(3)).

Plaintiff concedes that he did not exhaust his claim through all of the required levels of the grievance process in Illinois. Instead, he argues that it was impossible for him because the process was effectively unavailable. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) ("prison official's failure to respond to a prisoner's claim can render administrative remedies unavailable."). In short, a prisoner is not held accountable when he follows the proper grievance procedures and prison officials nevertheless mishandle the grievance. *See Dole*, 438 F.3d at 811; *Brengettcy*, 423 F.3d at 682.

Viewing the facts in a light most favorable to Plaintiff – as the Court is required to do at this procedure posture – Defendants have not established that Plaintiff failed to exhaust his deliberate indifference claim. To clarify, Plaintiff testified that he submitted a grievance three separate times, but received no response. The Seventh Circuit in *Brengettcy*, when considering the failure to exhaust a grievance at the Cook County Jail, concluded that a detainee cannot be faulted when correctional officials failed to respond to his grievance. *See Brengettcy*, 423 F.3d at 682. Here, there is nothing in the record to suggest that Plaintiff should have taken additional steps or contacted another correctional official once he filed his three unanswered grievances. Thus, the record presents a genuine dispute as to the material fact of whether Plaintiff submitted the grievances as he alleged, and if so, whether the grievances went unanswered. This factual dispute must be addressed through a hearing before the Court prior to trial under the procedures set forth in *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

## II.   Deliberate Indifference Claim

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 829 (7th Cir. 2009) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To succeed on a deliberate indifference claim, Plaintiff must prove that Defendants were intentionally indifferent to an objectively serious medical need or condition – negligence, gross negligence or medical malpractice is insufficient. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Arnett v. Webster*, 658 F.3d 742, 750-51 (7th Cir. 2011). To establish an Eighth Amendment deliberate indifference claim, Plaintiff must establish two elements: (1) he has an objectively serious medical condition; and (2) a prison official was deliberately indifferent to his medical needs. *See Arnett,* 658 F.3d at 750. Defendants do not dispute that Plaintiff has an objectively serious medical condition. *See Ortiz v. Webster,* 655 F.3d 731, 734 (7th Cir. 2011). Therefore, the Court turns to the second element of Plaintiff's deliberate indifference claim.

Under the second element, a "medical professional's deliberate indifference may be inferred when 'the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.'" *See King v. Kramer*, ___F.3d ___, 2012 WL 1889765, at *4 (7th Cir. May 25, 2012) (citation omitted). Thus, although negligence or medical malpractice do not constitute deliberate indifference, deliberate indifference can be inferred from actions that are "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" Plaintiff's condition. *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (citation omitted). In short, although the deliberate indifference standard for medical staff is high, Plaintiff is not required to show that he was "literally ignored." *See King,* 2012 WL 1889765, at *4 (quoting *Greeno,* 414 F.3d at 653).

Construing the evidence and all reasonable inferences in Plaintiff's favor, Plaintiff has set forth evidence raising a genuine dispute as to the material fact that Defendants did not attend to his serious medical needs and ignored his repeated requests for medical supplies. According to Plaintiff's deposition testimony, Defendants Smith and Dr. Mahone allegedly failed in their initial responsibility of obtaining the required medical supplies,

and Mays ignored Plaintiff's repeated requests for help. Plaintiff maintains that he was able to successfully address his medical condition for ten years prior to entering the NRC in 2010. Yet, after his four month stay at the NRC, his bladder control was damaged and he now must wear diapers.

In sum, Plaintiff's evidence is sufficient to defeat Defendants' summary judgment motion. *See Oritz*, 655 F.3d at 734-35. The Court appreciates that Defendants claim that they provided Plaintiff the necessary supplies, but at this procedural posture, the Court must view the evidence in Plaintiff's favor and cannot make credibility determinations. Therefore, Defendants have failed to established that there are no genuine disputes as to the material facts and that they are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a).